IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00325-NRN

WILLIE ALBERT CLARK,

Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

Defendant.

---

## OPINION AND ORDER

---

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Willie Albert Clark was not

disabled for purposes of the Social Security Act for the period from December 21,

2012 through October 31, 2014. (AR[1] 11.) Mr. Clark has asked this Court to

review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and

both parties have agreed to have this case decided by a U.S. Magistrate Judge

under 28 U.S.C. § 636(c). (Dkt. #21.)

## Standard of Review

In Social Security appeals, the Court reviews the decision of the

administrative law judge ("ALJ") to determine whether the factual findings are

supported by substantial evidence and whether the correct legal standards were

applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007).

---

[1] All references to "AR" refer to the sequentially numbered Administrative Record
filed in this case. (Dkt. ##19, and 19-1 through 19-11.)

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271-72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## Background

At the second step of the Commissioner's five-step sequence for making determinations,[2] the ALJ found that Mr. Clark "has the following severe impairments: right foot navicular stress fracture and hyperkeratosis." (AR 18.) The ALJ found that Mr. Clark's obstructive sleep apnea, eczema, hypertension, pes planus, and hyperlipidemia were non-severe impairments. (*Id.*)

As to Mr. Clark's medically determinable mental impairment of major depressive order, the ALJ found that it too was non-severe because it did not cause more than minimal limitation in his ability to perform basic mental work activities. (*Id.*) She found that Mr. Clark's mental impairments caused a mild

---

[2] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

restriction in activities of daily living, mild difficulties in social functioning and concentration, persistence, or pace, and noted that Mr. Clark had no episodes of decompensation. (AR 19-20.)

The ALJ then determined at step three that Mr. Clark "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations. (AR 20.) Because she concluded that Mr. Clark did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Mr. Clark has the following residual functional capacity ("RFC"):

> . . . [Mr. Clark] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1467(a). He cannot operate foot controls on the right. He cannot climb ladders and scaffolds or work at unprotected heights or with dangerous unprotected machinery. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He is limited to work that he can learn within three to six months.

(AR 20-21.)

The ALJ concluded that Mr. Clark was able to perform past relevant work as an appointment clerk. (AR 27.) Accordingly, Mr. Clark was deemed not to have been under a disability from December 21, 2012 through October 31, 2014.[3] (AR 11.)

## Analysis

Mr. Clark argues that the ALJ: (1) failed to give proper weight to the medical opinion of a treating medical provider; (2) incorrectly dismissed the

---

[3] The ALJ amended her decision on December 27, 2016 to clarify that her decision does not address or affect the finding that Mr. Clark was disabled based on a subsequent application of disability insurance benefits, with a disability onset date of November 1, 2014.

opinion of treating provider Margaret Plocharski; (3) erred in finding that Mr. Clark could return to his prior work; and (4) did not support her factual finding that Mr. Clark's severe impairment did not meet Listing 1.02 with substantial evidence. (Dkt. #13.) The Court will address each in turn.

### The ALJ's Weighing of Opinion Evidence

Mr. Clark first objects that the ALJ improperly afforded "little weight" to the opinion of Mr. Clark's treating provider, T. Kevin Hetherington, D.O.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). The ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight he assigns to them." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted). The applicable regulations governing the consideration of medical opinions distinguish among "treating" physicians, "examining" physicians, and "nonexamining" (or "consulting") physicians. *See* 20 C.F.R. § 416.927(c). Generally, "the opinions of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." *Sorenson v. Bowen*, 888 F.2d 706, 711 (10th Cir. 1989). *See also Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2)) ("The treating physician's opinion is given particular weight because of his or her 'unique

perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'").

The evaluation of a treating source's opinion is a two-step process. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* But good cause may exist for rejecting an opinion that is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

Next,

Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned.

*Krauser*, 638 F.3d at 1330. The factors the ALJ must consider are:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin,* 813 F.3d 1326, 1331–32 (10th Cir. 2016). Neither the regulations nor the Court require a factor-by-factor recitation, but the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the source opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted).

On April 15, 2014, Dr. Hetherington provided the following "opinion":

> Please be aware that Mr. Clark continues to suffers [sic] with chronic, daily pain resulting from a complication arising out of a right foot surgery in May 2010. His diagnosis is Complex Regional Pain Syndrome Type 1, Right Leg (also known as Reflex Sympathetic Dystrophy). He describes the pain as radiating from his right knee area to his right foot with a constant tingling/throbbing sensation. Additionally, he describes his right foot as feeling as if it has a "tight glove on it." His pain is worse with palpation, ambulation, and walking barefoot. As a result of the pain, he has difficulty focusing on various tasks as well as walking more than 150 yards at a slow pace with the use of a cane. He adds that during pain flareups which occur 2-3 times per month he has great difficulty even ambulating. Currently, he is receiving both narcotic and non-narcotic pain medication to help manage his symptoms.

(AR 567.) The ALJ afforded this opinion little weight because "Dr. Hetherington merely repeated the claimant's subjective reports and did not provide any objective functional limitations." (AR 25.)

It is undisputed that Dr. Hetherington qualifies as a treating physician. However, it is equally clear to the Court that the above "opinion" is not entitled to controlling weight because it was based on Mr. Clark's subjective statements, and therefore was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Krauser,* 638 F.3d at 1330. Thus, the ALJ did not err by declining to give his opinion, such as it was, controlling weight.

Mr. Clark argues that even if Dr. Hetherington's opinion was not entitled to controlling weight, the ALJ was not within her rights to discount that opinion as a matter of course. While this an accurate statement of the law, the Court is not convinced that Dr. Hetherington's statement qualifies as a medical opinion that is entitled to any weight. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Dr. Hetherington relays what Mr. Clark told him about his symptoms, but he offers no professional judgment as to the severity of Mr. Clark's impairments, nor does he assign any functional limitations based on those impairments. This is not a true medical opinion. *See Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) ("Dr. Gietzen's brief statement on the medical form was not a true medical opinion. It did not contain Dr. Gietzen's judgment about the nature and severity of Mr. Cowan's physical limitations, or any information about what activities Mr. Cowan could still perform.").

The only medical opinion Dr. Hetherington arguably offers is the diagnosis of Reflex Sympathetic Dystrophy ("RSD"). But "[t]he mere diagnosis of a condition does not establish its severity or any resulting work limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) (unpublished). *See also Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (stating that the "mere presence" of a medical condition is not enough; rather, that condition, "alone or in combination with other impairments, must render [the] claimant unable to engage

7

in any substantial gainful employment") (brackets and internal quotation marks omitted); *Bales v. Colvin*, 576 F. App'x 792, 797 (10th Cir. 2014) (unpublished) ("Ms. Bales fails to explain how Dr. Reddy's findings have any bearing on her functional limitations, such that the ALJ should have specifically discussed those findings in setting her RFC for medium work.").

Because the ALJ was not required to even consider Dr. Hetherington's findings in formulating Mr. Clark's RFC, Mr. Clark has not established reversible error in the ALJ's failure to give Dr. Hetherington's "opinion" anything more than "little weight."

### The ALJ's Treatment of Margaret Plocharski's Opinion Evidence

Mr. Clark contends that the ALJ erred when she afforded Margaret Plocharski's opinion only partial weight because, in part, she determined that Ms. Plocharski was not an Acceptable Medical Source ("AMS"). The Court disagrees.

On July 11, 2013, Ms. Plocharski completed a "Med–9 Form" for the Colorado Department of Human Services, in which she opined that Mr. Clark was disabled and incapable of working for at least six months due to his broken foot. (AR 516-517.) The ALJ found that Ms. Plocharski was not an AMS because she was not a "licensed physician, licensed osteopath, licensed or certified psychologist, licensed optometrist, [or] person[] authorized to send summaries of medical records of a hospital, clinic, sanitarium, medical institution or health care facility." (AR 26 (citing 20 C.F.R. §§ 404.1513 and 416.913).) There was some confusion regarding Ms. Plocharski's title and position: she signed her name followed by the initials M.S., apparently to indicate that she has a Master of

Science degree. (AR 517.) In any event, the record demonstrates that Ms.

Plocharski is a nurse practitioner. (AR 623.) As such, the ALJ correctly

determined that she was not an AMS whose opinion is entitled to any weight.

*See* 20 C.F.R. § 404.1513(a). *See also Irving v. Astrue*, No. 10-cv-01657-CMA,

2011 WL 2173780, at *8 (D. Colo. June 1, 2011) ("[T]he ALJ correctly noted that

opinions by nurse practitioners are not accepted medical source opinions entitled

to weight.").[4]

Nevertheless, Mr. Clark maintains that the ALJ was still required to

consider her opinion as an "'other source[ ]' whose opinion[ ] can be considered

'to show the severity of the individual's impairment(s) and how it affects the

individual's ability to function.'" *Block v. Astrue*, 506 F. App'x 764, 770 (10th Cir.

2012) (quoting SSR 06-03p, 2006 WL 2329939, at *2). This argument may have

been more persuasive had Ms. Plocharski actually provided a "medical opinion,"

but, as with Dr. Hetherington, she did not. A "Med–9 form is not a true medical

opinion because it does not contain judgments about the nature and severity of

plaintiff's physical limitations, or any information about the activities plaintiff could

perform." *Zacevich v. Astrue*, No. 10-cv-02165-PAB, 2011 WL 4536989, at *5 (D.

Colo. Sept. 29, 2011). *See also Chapo v. Astrue*, 682 F.3d 1285, 1289 (10th Cir.

2012) (labelling the Med-9 Form a "conclusory form, which lack[s] any functional

findings" and holding that the ALJ properly gave it no weight). Although the Tenth

Circuit has refused to find categorically that Med–9 Forms are entitled to no

---

[4] For claims filed after March 27, 2017, nurse practitioners are included in the AMS definition. The claim at issue was filed well before then.

weight, *see Andersen v. Astrue*, 319 F. App'x 712, 723–25 (10th Cir. 2009), the ALJ gave additional reasons to discount Ms. Plocharski's opinion. The ALJ noted that Ms. Plocharski's statement that Mr. Clark cannot perform any work is not consistent with the objective medical evidence and relies heavily on Mr. Clark's subjective complaints. (AR 25.) The ALJ also noted that Ms. Plocharski opined in areas reserved to the Commissioner, i.e., whether Mr. Clark is disabled. (AR 25-26.) Mr. Clark does not challenge these findings, and both are legitimate and specific reasons to reject or give less weight to Ms. Plocharski's opinion. *See Watkins*, 350 F.3d at 1300 (the ALJ's decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to [medical opinions] and the reasons for that weight."). Accordingly, the ALJ did not err in only giving partial weight to Ms. Plocharski's medical opinion.

**The ALJ's RFC Determination**

Next, Mr. Clark claims that the ALJ's sedentary RFC finding was not based on substantial evidence. Mr. Clark's argument focuses on the ALJ's treatment of the opinion of consultative medical examiner Linda Mitchell, M.D. Dr. Mitchell performed an examination on September 10, 2013. (AR 543-48.) According to Dr. Mitchell's report, Mr. Clark presented with complaints of RSD because of an ankle navicular fracture, with hypersensitivity and occasional shooting pain in his right leg, along with swelling and cramping in his foot. (AR 543.) Mr. Clark reported that he could not stand to be barefoot and he used a cane about 40-60% of the time. (*Id.*) Upon examination, Dr. Mitchell noted Mr. Clark was pleasant, cooperative, and in no acute distress. (AR 545.) He

preferred to sit with his right leg elevated, and had no trouble getting on and off the examining table or maneuvering in the examination room. (*Id.*) His gait was antalgic, he was unable to stand on heels or toes, and he used a cane during the examination. (AR 546.) His right ankle joint was less flexible than his left. (AR 547.) He was hypersensitive to light touch, distal to the right knee. (*Id.*)

Dr. Mitchell diagnosed Mr. Clark with "chronic regional pain syndrome, right lower extremity," and "right ankle navicular fracture, nonunion," among other things (*Id.*) Her functional assessment was as follows:

> The number of hours claimant should be able to stand or walk during a normal eight-hour workday is about two hours. There are no recommended limitations on the number of hours claimant should be able to sit during a normal eight-hour workday. It is recommended claimant avoid squatting, crouching, stooping or kneeling. The amount of weight claimant should be able to lift or carry is in the range of 10 to 20 pounds. It is recommended claimant use his cane regularly. There are no manipulative limitations recommended. It is recommended claimant avoid unprotected heights, stairs, and ladders.

(AR 548.)

Despite giving Dr. Mitchell's opinion "great weight" (AR 25), the ALJ's RFC stated that Mr. Clark could "occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl." (AR 20-21.) Mr. Clark asserts that this finding is not in accord with Dr. Mitchell's opinion. Under the regulations, in the context of sedentary work, "'[o]ccasionally' means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday." Social Security Ruling 96–9p, 1996 WL 374185 (July 2, 1996). "A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually

apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." *Id.* Mr. Clark argues that because Dr. Mitchell opined that he should not stoop, the ALJ's RFC for sedentary work was not supported by substantial evidence.

In response, the Commissioner points out that any erosion of the sedentary occupational base, which is relevant to the step five analysis as to whether there are jobs in the national economy that a claimant can perform, is irrelevant here because the ALJ found at step four that Mr. Clark could return to his past work. The Court finds that the Commissioner has the better argument.

In *Barnhart v. Thomas*, the Supreme Court was confronted with the issue of whether the government may determine that a claimant is not disabled because she remains physically and mentally able to do her previous work, without investigating whether that previous work exists in significant numbers in the national economy. 540 U.S. 20, 22 (2003). The Court answered in the affirmative, and deferred to the Social Security Administration's interpretation that

> step four can result in a determination of no disability without inquiry into whether the claimant's previous work exists in the national economy; the regulations explicitly reserve inquiry into the national economy for step five. Thus, the SSA has made it perfectly clear that it does not interpret the clause "which exists in the national economy" in § 423(d)(2)(A) as applying to "previous work."

*Id.* at 25.

Here, the ALJ found that Mr. Clark could perform his past work as appointment clerk. Thus, no step five analysis was required. *See* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find you are not disabled."). Moreover, the appointment clerk position does not require

any stooping. *See* Dictionary of Occupational Titles 237.367-010 ("Stooping: Not Present - Activity or condition does not exist"). Therefore, even if the ALJ had entirely relied on Dr. Mitchell's opinion in determining the RFC, Mr. Clark was still eligible to perform past work. Accordingly, any error in formulating the RFC is a harmless one, and not grounds for remand. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). (a harmless error is one "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

### The ALJ's Finding that Mr. Clark's Impairments Did Not Meet Listing 1.02

Finally, Mr. Clark argues that his right foot navicular stress fracture meets, equals, and exceeds the requirements of Social Security Listing 1.02, and the ALJ erred at step three in not finding him disabled on this basis. That listing provides, in relevant part, as follows:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02.

Mr. Clark claims that the ALJ ignored substantial evidence showing that he met these criteria. Instead, the ALJ only determined that Mr. Clark did not meet the criteria for listing 1.06.

However, in support of his position, Mr. Clark only points to "extensive evidence contained in the record regarding Mr. Clark's ongoing complications from the 2010 ankle fracture and his difficulty ambulating." He does not point to the specific medical evidence that supports his contention that his limitations meet the necessary criteria, and the Court will not do his work for him. *See Aslan v. Colvin,* 637 F. App'x 509 (10th Cir. 2016) (unpublished) ("The problem is that Mr. Aslan fails to direct our attention to any medical records confirming he suffers from spinal arachnoiditis."). Specifically, Mr. Clark fails to cite sufficient evidence that he is unable to ambulate effectively, which means:

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .

> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1).

Although the records indicate that Mr. Clark walks with an antalgic gait and frequently uses a cane, the ALJ explicitly found that "the evidence does not establish that . . . the claimant could not ambulate effectively." (AR 20.) Her conclusion is supported by substantial evidence, which includes imaging that showed that Mr. Clark's ankle fracture had healed (*see* AR 549 ("normal right foot radiographs" with "no osseous, joint or soft tissue abnormalities")), as well as Mr. Clark's ability to walk his dog, prepare meals, wash his laundry and dishes, and shop. (AR 21.) Because Mr. Clark failed to satisfy all the criteria in listing 1.02, he cannot prevail at step three as a matter of law. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

## Conclusion

For the reasons set forth above, the Commissioner's decision is **AFFIRMED** and Petitioner's Complaint (Dkt. #1) is **DISMISSED**.

Dated this 7th day of May, 2019.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge